### Application of WADE BROTHERS TRANSFER CO.
Docket No. 72285-KC. Order No. 10559.

Florida Public Service Commission.

March 5, 1973

Sol H. Proctor, Jacksonville, for the applicant.

Richard B. Austin, Miami, for Gold Coast Trucking and Express, protestant.

Lawrence Fay, Jacksonville, for Gator Freightways, Inc., Jacksonville Transfer & Storage Co. and Smalley Transportation Co., protestants.

Dan R. Schwartz, Jacksonville, for M.R. & R. Trucking Co., protestant.

James E. Wharton, Orlando, for Alterman Transport Lines, Inc. and Schreiber Express, Inc., protestants.

Chairman WILLIAM H. BEVIS and Commissioners WILLIAM T. MAYO and PAULA F. HAWKINS participated in the disposition of this matter.

Pursuant to notice, the commission by its duly designated hearing examiner, Dwight E. Ogier, held a public hearing on the above matter on August 4, 1972, at Jacksonville.

The entire record herein, including the application, the testimony adduced at the public hearing, and the exhibits received in evidence, has been reviewed by the commission. After due consideration, the commission now enters its order in this cause.

## BY THE COMMISSION.

By this application, Wade Brothers Transfer Company seeks a contract motor carrier certificate authorizing transportation of major appliances from Jacksonville, Tampa and Miami to all points in Florida and return, on irregular routes and schedules under contract with General Electric. The proposed contract was admitted into evidence pursuant to Commission Rule 25-5.05.

As a result of the evidence received at the above public hearing, the examiner concluded —

That the applicant is fully qualified to provide the proposed transportation;

That the contract in question seeks to provide for general commodity carriage at the FIRB tariff for general commodity carriers;

That the FIRB tariff is silent with respect to any incidental or extra labors;

That there was no mention in contract of any type service contemplated other than pure transportation;

That the contract does not contain a full disclosure of the provisions of the agreement between the parties;

That public convenience and necessity does not require the grant of the application; and

That the grant of authority would adversely affect existing transportation facilities in the territory involved.

Accordingly, the examiner recommended that the application be denied.

Exceptions to the examiner's recommendation were timely filed on behalf of the applicant. In its exceptions the applicant urges—

That the examiner failed to give any consideration to the needs of the public;

That the protestants cannot and will not perform the services proposed by the applicant;

That the commission has granted authority to other carriers to perform the same services as proposed by the applicant;

That the applicant's agreement to charge the same rates as charged by the protestants was acceptable to the commission;

That the contract was not insufficient since it set forth the proposed service in general terms with the total operation outlined in detail at the public hearing; and

That the record clearly shows a need for the proposed transportation that cannot be fulfilled by existing carriers.

Replies to the applicant's exceptions were filed on behalf of each protestant. Generally speaking, these replies reiterated the findings and conclusions of the hearing examiner.

After a thorough examination of the entire record in this case, the commission concurs with the examiner's finding that the applicant is fully qualified to provide the proposed transportation. The applicant is a corporation, and its president has conducted the same transportation of the type proposed here for approximately eight years with V. F. Carter Delivery Service which holds Contract Carrier Certificate No. 870.

The commission further finds that the proposed contract, when read in conjunction with the transcript of the public hearing, sufficiently outlines the operation proposed by the applicant. The contract and testimony of the applicant's operating witness clearly indicates that the service proposed by Wade is that of a contract carrier. Wade will station equipment and maintain its office at General Electric's facilities; it will make job site deliveries; it will assist in obtaining the appliances from the warehouse inventory in

loading them on the motor vehicle equipment; it will deliver the appliances at job sites; it will provide exact time deliveries; and it will make deliveries directly from the warehouse to the job site on the same day. At the job site Wade will perform a setup service which will include the placing of the appliances in the mobile home, apartment, or other type of residence. Wade will make certain that the equipment functions properly; it will level the appliances; arrange for the disposal of the crating material; and it will return the appliance if it fails to function properly.

The commission also finds that public convenience and necessity requires the grant of the subject application and that the grant of authority will not have a material adverse effect on existing transportation facilities. The record clearly reflects that no protestant is capable of providing the service proposed by the applicant herein. The record contains the following testimony by witnesses for the protestants —

Cross-examination of Mr. S. M. Webster, terminal manager for Alterman Transport Lines (TR. p. 177) —

Q. Now, Mr. Webster, if General Electric called your company Monday morning and said, "We have got 17 appliances and we want you to take them to Orlando to a job site and set them in," would you be able to do that?

A. Not in the terms I have heard it illustrated today.

Cros-examination of Mr. George P. Lewis, sales representative in charge of sales and supervision of operations for Schreiber Express (TR. pgs. 187-188) —

Q. Did you advise Mr. Colgrove [General Electric] that your company could provide the setting in service?

A. No, sir.

Q. As a matter of fact, you don't provide that service?

A. No, sir.

Q. Did you advise Mr. Colgrove that you could handle uncrated appliances?

A. No, sir.

Q. As a matter of fact, you don't handle uncrated appliances?

A. No, sir.

Q. Did you advise Mr. Colgrove that you could make definite appointment deliveries or timed deliveries?

A. No, sir.

Q. As a matter of fact, your company doesn't hold itself out to provide time deliveries?

A. If we sign the bill of lading that stipulates a timed delivery, we will make every effort to perform this service.

Q. I realize that you will make effort to do it, but if you failed to do it, you are not going to agree to make payment of any claim that may result because of your failure?

A. No, sir.

Cross-examination of Mr. John F. Edwards, assistant vice president of traffic of M. R. & R. Trucking Company (TR. p. 221) —

Q. Mr. Edwards, your company holds itself out to provide uncrated service on appliances?

A. No, sir.

Cross-examination of Mr. Earl S. Joyner, vice president, Gator Freightways, Inc. (TR. pgs. 250-251) —

Q. Mr. Joyner, if your driver in his pickup and delivery unit would appear at General Electric next Monday and they had an uncrated refrigerator, what would you say?

A. At the present time I couldn't handle it because I am almost positive that because it's not in the tariff that we can't handle an uncrated appliance at this time. I think it could be put in the tariff where we would be allowed to handle it.

Q. We realize that anything could be proposed to be put in the tariff.

A. True.

Q. Now, if your truck appears Monday morning and they said, "Here are 17 refrigerators. We want you to take these to Lake City, install them and level them and unpack them and take the crates and bring them back and discard them," what would you tell them?

A. If they asked me to do it Monday morning, I would not do it because at the present time we do not have the proper tariff authority to do it, but I am sure, as I said before we could cause this to be done and could handle it.

Q. If General Electric Company called you Monday morning and said, "We have these 17 refrigerators going to Lake City, and we want you to deliver them this afternoon at 2:30," what would you tell them?

A. Well, I would say we could not or probably would not deliver 17 refrigerators in Lake City if we picked them up one day and delivered them the same day. If it was a volume movement probably consisting of eight to ten thousand pounds, we would and we do at the present time handle volume shipments on the same day delivery in this area.

Cross-examination of Mr. W. F. Wessinger, vice president, Jacksonville Transfer & Storage Company (TR. pgs. 294-295) —

Q. You handle uncrated appliances?

A. What type of service?

Q. Crated appliances going to the various destinations indicated by General Electric which requires the unpacking, the timed delivery, the leveling, the taking away, plugging in, return of the damaged or unusable appliances?

A. On the Jacksonville Transfer & Storage system, I am talking about the general commodity certificate. We pick it up, we haul it over the road and crate it for them. Yes, we have deliverymen. We do not uncrate, install and level under this certificate.

Q. You do not do the items that the other carriers have indicated they do not do, but you do the same that they have indicated they do do?

A. Yes, sir.

The existing carriers who protested this application are only able to provide an over the road transportation service. However, the record clearly shows that General Electric requires a great deal more. Since the transportation proposed by Wade is a specialized type of service and the record shows that there is a need for such, and this need cannot be met by the protestants, the commission finds that public convenience and necessity requires the grant of authority.

The commission also finds that the applicant is not eligible to join the tariff bureau or adopt the FIRB charges by reference. As a result, Wade shall be directed to file with this commission an addendum to its contract in which it sets forth a schedule of rates it agrees to charge. Said rates must be at least as high as those provided in the FIRB tariff for general commodity carriers.

The commission, having considered protestants' motions to dismiss and motions for directed verdict, finds that said motions are without merit and must be denied.

Therefore, and in accordance with the above, it is ordered that the application of Wade Brothers Transfer Company, Route 1, Box 209-C, Hilliard, Florida, for a contract motor carrier certificate under contract with General Electric be and the same is hereby granted with Certificate of Public Convenience and Necessity No. 1113 thereby being issued to authorize the transportation of major appliances from Jacksonville, Tampa and Miami to all points in Florida and return, on irregular routes and schedules under contract with General Electric.

It is further ordered that Wade Brothers Transfer Company file with this commission within sixty days from the date of this order an addendum to its contract with General Electric in which it sets forth, and agrees to charge, a schedule of rates at least as high as those provided in the FIRB tariff for general commodity carriers.

It is further ordered that protestants' motions to dismiss and motions for directed verdict be and the same are hereby denied.

It is further ordered that this grant of authority be held in abeyance pending compliance with the commission's rules pertaining to contract motor carriers within sixty days from the date of this order; otherwise, the order shall be held null and void.

By order of Chairman WILLIAM H. BEVIS, Commissioner WILLIAM T. MAYO and Commissioner PAULA F. HAWKINS, as and constituting the Florida Public Service Commission, this 5th day of March, 1973.

*William B. De Milly*
Administrative Secretary